```
           IN THE UNITED STATES DISTRICT COURT
           FOR THE SOUTHERN DISTRICT OF TEXAS
                  CORPUS CHRISTI DIVISION
```

| | |
|---|---|
| DOUG BEARD, | § |
| | § |
|     Plaintiff, | § |
| | § |
| vs. | §    C.A. NO. C-06-142 |
| | § |
| AURORA LOAN SERVICES, LLC, | § |
| et al, | § |
| | § |
|     Defendants. | § |

## ORDER OF REMAND

On this day came on to be considered Plaintiff's Motion to Remand the above-styled action for lack of subject matter jurisdiction. (D.E. 7.) For the reasons discussed below, the motion to remand is GRANTED and the above-styled action is REMANDED pursuant to 28 U.S.C. § 1447(c) to the County Court at Law No. 3 of Nueces County, Texas, where it was originally filed and assigned Cause Number 0660565-3.

## I. BACKGROUND

On February 22, 2006, Plaintiff Doug Beard ("Plaintiff") filed suit in County Court at Law No. 3 in Nueces County, Texas, against Defendants Aurora Loan Services, LLC, Lisa Cockrell, Mary Speidel, Robert L. Negrin, Sue Anthony, and Codilis & Stawiarski, P.C. (collectively, "Defendants")[1] alleging wrongful foreclosure, breach

---

[1] Plaintiff's Petition also named as Defendants the "Unknown Holders and/or Owners of Residual Interest In Securitization of Mortgage Loans that Included Mortgage Loan of Doug Beard."

1

of contract, negligence, intentional infliction of emotional distress, breach of fiduciary duty, unlawful debt collection practices, and violations of the Texas Deceptive Trade Practices Act. (See Pl.'s Orig. Pet. ("POP") at ¶¶ 3-9, 27-49.) Plaintiff is a citizen of Texas. (Not. of Rem. ("NOR") at ¶ 6.) Defendant Aurora Loan Services ("Aurora") is a citizen of Delaware and Colorado. (NOR at ¶ 7.) Defendants Lisa Cockrell, Mary Speidel, Robert L. Negrin, Sue Anthony, and Codilis & Stawiarski, P.C. (The "Law Firm Defendants") are all citizens of Texas. (NOR at ¶ 8.)

According to his state court petition, Plaintiff owned a home at 825 Alhambra Drive, Corpus Christi, Texas. (POP at ¶ 17.) Plaintiff had a mortgage on the home and Defendant Aurora serviced the mortgage. (POP at ¶ 17.) Plaintiff alleged that, while Aurora was servicing the loan, it intentionally miscalculated his mortgage balance and falsely claimed that it was not receiving loan payments from Plaintiff. (POP at ¶¶ 17-18, 28.) Plaintiff also alleged that Aurora failed to provide him with proper accountings or statements regarding the mortgage loan. (POP at ¶ 19.) Plaintiff claimed that Aurora, with the help of the Law Firm Defendants, then "maliciously and wrongfully" foreclosed on his home and failed to provide proper notice of the foreclosure sale. (POP at ¶¶ 20, 23, 28, 30.) According to Plaintiff, Aurora purchased Plaintiff's home at the foreclosure sale for far less than its market value and thus profited from its illegal foreclosure. (POP at ¶¶ 21, 24.)

Finally, Plaintiff claimed that the Defendants are currently working to evict him from his home. (POP at ¶ 26.)

On February 27, 2006, Plaintiff served Defendant Aurora with a copy of his Original Petition. On March 28, 2006, Aurora removed the case to this Court alleging both diversity and federal question jurisdiction pursuant to 28 U.S.C. §§ 1331 and 1332. On April 12, 2006, Plaintiff filed a motion to remand the case for lack of subject matter jurisdiction. (D.E. 7.) On May 1 and 2, 2006, Aurora and the Law Firm Defendants filed responses to Plaintiff's motion to remand. (D.E. 16, 17.)

**II. DISCUSSION**

A party may remove an action from state court to federal court if the action is one over which the federal court possesses subject matter jurisdiction. See 28 U.S.C. § 1441(a). A court, however, "must presume that a suit lies outside its limited jurisdiction, and the burden of establishing federal jurisdiction rests on the party seeking the federal forum." Howery v. Allstate Ins. Co., 243 F.3d 912, 916 (5th Cir. 2001); see also Manguno v. Prudential Prop. & Cas. Ins. Co., 276 F.3d 720, 723 (5th Cir. 2002). In evaluating jurisdiction, "[a]ny ambiguities are construed against removal because the removal statute should be strictly construed in favor of remand." Manguno, 276 F.3d at 723; see also Acuna v. Brown & Root, Inc., 200 F.3d 335, 339 (5th Cir. 2000) ("[D]oubts regarding whether removal jurisdiction is proper should be resolved against

federal jurisdiction").

### A.   Federal Question Jurisdiction

Aurora first claims that removal is proper because the Court has federal question jurisdiction over this case.

#### 1.   Well-Pleaded Complaint Rule

A federal district court has subject matter jurisdiction over "all civil actions arising under the Constitution, laws, or treaties of the United States." 28 U.S.C. § 1331. Generally, the determination of whether a court has federal question jurisdiction is resolved by application of the "well-pleaded complaint" rule. Merrell Dow Pharmaceuticals v. Thompson, 478 U.S. 804, 808 (1986); Hart v. Bayer Corp., 199 F.3d 239, 243 (5th Cir. 2000). This rule:

> provides that the plaintiff's properly pleaded complaint governs the jurisdictional inquiry. If, on its face, the plaintiff's complaint raises no issue of federal law, federal question jurisdiction is lacking.

Hart, 199 F.3d at 243 (citing Franchise Tax Bd. v. Laborers Vacation Trust, 463 U.S. 1, 10 (1983)). "The plaintiff is thus the master of her complaint." Carpenter v. Wichita Falls Indep. Sch. Dist., 44 F.3d 362, 366 (5th Cir. 1995). Where a plaintiff has a choice between federal and state law claims, he "may elect to proceed in state court on the exclusive basis of state law, thus defeating the defendant's opportunity to remove, but taking the risk that his federal claims will one day be precluded." Id.

A defendant cannot establish federal question jurisdiction merely by showing that federal law will "apply" to a case or that

there is a "federal issue" in the plaintiff's state law causes of action. Id.; see also Thompson, 478 U.S. at 813. Similarly, it is insufficient for a defendant to show that there is a federal *defense* (including the defense of preemption) to a plaintiff's state law claims. See, e.g., Hoskins v. Bekins Van Lines, 343 F.3d 769, 772 (5th Cir. 2003); Carpenter, 44 F.3d at 366. Rather, federal jurisdiction is sustainable only if the defendant "shows that (1) a federal right is an essential element of [the plaintiff's] state claim, (2) interpretation of the federal right is necessary to resolve the case, and (3) the question of federal law is substantial." Howery, 243 F.3d at 918.

The Court finds that there is no federal question jurisdiction over this case. Plaintiff's petition does not invoke, or even reference, federal law except to state that:

> Plaintiff expressly disclaims any rights and causes of action under any federal law, choosing instead to base all claims and causes of action entirely on the common law and statutes of the state of Texas.

(POP at ¶ 11.) This language clearly shows that Plaintiff elected to proceed in state court on the exclusive basis of state law. Thus, under the well-pleaded complaint rule, there is no federal question jurisdiction.

Aurora's argument that this case is "nonetheless removable to federal court [because] it turns on the resolution of substantial predicate questions of federal law" is unpersuasive because Aurora has failed to establish all the prongs of the Howery jurisdiction

5

test.  (NOR at ¶ 12.)  The mere fact that the Real Estate Settlement Practices Act[2], Home Owners Loan Act[3], Fair Debt Collection Practices Act[4], and Truth-in-Lending Act[5] may govern some of the conduct of which Plaintiff complains in this case is not alone sufficient to confer federal jurisdiction.  See, e.g., Howery, 243 F.3d at 915, 917-18 (issue of whether defendants violated FTC rules and regulations was not sufficient to confer federal jurisdiction where the federal violations merely described the conduct that violated Texas law); Thompson, 478 U.S. at 805-06 (issue of whether a drug was "misbranded in violation of the [FDCA]" was not sufficient to confer federal jurisdiction where the misbranding was used to establish negligence *per se* under Ohio law); PCI Transp., Inc. v. Fort Worth & Western R.R. Co., 418 F.3d 535, 543 (5th Cir. 2005) (stating that "[p]otential defenses, including a federal statute's preemptive effect, *do not provide a basis for removal*").  Aurora has failed to show that the issue of whether it violated these federal statutes is *itself an element* of Plaintiff's state law claims.  See Howery, 243 F.3d at 918. Likewise, because a violation of federal law is not an essential element of Plaintiff's claims, "interpretation of a federal right

---

[2] 12 U.S.C. § 2601 et seq.

[3] 12 U.S.C. § 1461 et seq.

[4] 15 U.S.C. § 1692 et seq.

[5] 15 U.S.C. § 1601 et seq.

is not necessary to this case." Id. Finally, the federal issues are not "substantial" because the state law issues in Plaintiff's seven Texas causes of action are likely to overwhelm any federal issues in the case. Id. at 919. Therefore, Aurora has failed to meet its burden of establishing that the Court has federal question jurisdiction over this case.

### 2. Complete Preemption Exception

Despite the fact that Plaintiff's complaint does not support federal question jurisdiction, Aurora nonetheless argues that jurisdiction is appropriate because "Plaintiff's claims against Aurora are wholly preempted by federal law." (NOR at ¶ 9.) In particular, Aurora argues that the "Home Owners Loan Act ("HOLA") . . . and accompanying regulations expressly preempt state laws" and "preclude application of state law effecting [*sic*], inter alia, loan-related fees, including servicing fees and overlimit fees as well as with respect to the processing, origination, and servicing of mortgages." (NOR at ¶¶ 10-11.)

Where the plaintiff's complaint does not invoke federal law, a court has federal question jurisdiction only if the defendant can show that federal law "completely preempts" state law. Hart, 199 F.3d at 244. If complete preemption is found, a plaintiff's facially state law claims will be "recharacterized" as a federal cause of action. Id. (citing Caterpillar, Inc. v. Williams, 482 U.S. 386, 393 (1987)). "Federal preemption is ordinarily a federal

*defense* to the plaintiff's suit," and not an authorization of removal to federal court. Metropolitan Life Ins. Co. v. Taylor, 481 U.S. 58, 63 (1987) (emphasis supplied). "Complete preemption," however, is an exception to the normal rules for evaluating jurisdiction. Absent "extraordinary circumstances the well-pleaded complaint rule governs." Carpenter, 44 F.3d at 367 (citing Franchise Tax Bd., 463 U.S. at 10).

In order to establish complete preemption, a defendant must do more than show that federal law provides a *defense* to the application of state law. Hart, 199 F.3d at 244; see also Taylor, 481 U.S. at 66 ("even an obvious pre-emption defense does not, in most cases, create removal jurisdiction"). Rather, "the defendant must demonstrate that Congress intended not just to preempt a state law to some degree, but to altogether *substitute* a federal cause of action for a state cause of action." Hart, 199 F.3d at 244 (emphasis supplied); see also Carpenter, 44 F.3d at 366 (stating that Congress must "so forcibly and completely displace state law that the plaintiff's cause of action is either wholly federal or nothing at all"). The Fifth Circuit will not find complete preemption of state law unless (1) federal law provides the plaintiff with a private right of action, and (2) Congress intended that the federal cause of action be the plaintiff's *exclusive remedy*. PCI Transp., 418 F.3d at 544; Hoskins v. Bekins Van Lines,

343 F.3d 769, 775-76 (5th Cir. 2003).[6]

Defendant Aurora has failed to meet its burden of showing that HOLA has the "extraordinary pre-emptive power" needed to support federal jurisdiction. Metropolitan Life, 481 U.S. at 65. First, Aurora has failed to show that HOLA contains a private, civil enforcement provision applicable to the facts alleged in Plaintiff's petition. The only civil enforcement provision cited by Aurora is contained in 12 U.S.C. § 1463, which provides for private suits against savings associations for charging excessive interest. See Id. at § 1463(g)(1)-(2). Aurora argues that this section of HOLA is similar to § 86 of the National Bank Act, which the Supreme Court found to completely preempt a plaintiff's state law usury claims in Beneficial National Bank v. Anderson, 539 U.S. 1 (2003). Therefore, Aurora argues that § 1463(g)(2) also completely preempts state law claims in this case.

This argument, however, ignores the fact that Plaintiff has *not alleged a usury claim* against Aurora. The plaintiffs in Beneficial explicitly "sought relief for usury violations and claimed that [defendants] charged excessive interest in violation of the common law usury doctrine and violated Alabama [law] by

---

[6] The Supreme Court has found very few federal statutes to have such broad preemptive scope: § 301 of the Labor Management Relations Act, § 502(a)(1)(B) of the Employee Retirement Income and Security Act, and § 86 of the National Bank Act. See Avco v. Aero Lodge No. 735, 390 U.S. 557 (1968); Metropolitan Life, 481 U.S. at 66; Beneficial Nat'l Bank v. Anderson, 539 U.S. 1 (2003).

9

charging excessive interest." <u>Beneficial</u>, 539 U.S. at 9.  In this case, however, Plaintiff has not alleged that Aurora charged excessive interest and, in fact, expressly disclaimed "that any fees [or] charges . . . are, in and of themselves, illegal."  (POP at ¶ 12.)  Thus, while HOLA may completely preempt state law claims of usury, Plaintiff has not asserted a usury claim in this case and therefore Aurora may not rely on § 1463(g)(2) to show preemption.

Rather than alleging usury, Plaintiff has claimed that Aurora intentionally miscalculated his mortgage balance, falsely claimed that it was not receiving loan payments, and wrongfully foreclosed on his home.  (POP at ¶¶ 17-18, 28.)  Aurora has failed to demonstrate that HOLA provides a private federal remedy for such conduct.  In fact, courts have consistently noted that HOLA generally does *not* allow for such private suits. <u>See</u>, <u>e.g.</u>, <u>Taylor v. Citizens Fed. Sav. & Loan Ass'n</u>, 846 F.2d 1320, 1323-24 (11th Cir. 1988) (finding "no express language or other evidence of congressional intent to provide a private right of action" under HOLA); <u>Burns Intern., Inc. v. Western Sav. & Loan Ass'n</u>, 978 F.2d 533, 535 (9th Cir. 1992) (finding no private federal cause of action for violation of HOLA); <u>Reschini v. First Fed. Sav. & Loan Ass'n of Indiana</u>, 46 F.3d 246, 255 (3d Cir. 1995) (plaintiff "has not identified any provision of HOLA or the National Housing Act that indicates congressional intent to create, either expressly or by implication, a private cause of action.  Our own examination has

been no more fruitful"); Korfhage v. Great Financial Corp., 127 F.3d 1102, 1997 WL 671717 at *1 (6th Cir. Oct. 24, 1997) (Table decision) (dismissing, as without jurisdiction, an action filed pursuant to HOLA, noting that the "act did not provide jurisdiction to consider" such a claim).[7]  Without a private, federal cause of action for the conduct alleged in Plaintiff's petition, Aurora cannot rely on complete preemption to support federal jurisdiction.

Second, even if HOLA did provide a federal remedy for the conduct of which Plaintiff complains, Aurora has also failed to show that Congress intended that remedy to be exclusive.  Indeed, the federal regulations accompanying HOLA contradict such an assertion.  12 C.F.R. § 560.2 expressly states that certain state laws "are not preempted to the extent that they only incidentally affect the lending operations of Federal savings associations or are otherwise consistent" with the regulation.  See Id. at § 560.2(c).  Examples of laws that are not preempted include contract and commercial law, real property law, and tort law.  Id.  Thus, the regulations assume that a savings association may be subject to state law tort and contract claims in certain circumstances. Therefore, it cannot be said that Congress intended HOLA to be a

---

[7] Nor can the federal regulations accompanying HOLA be the basis for a private right of action.  See Casas v. American Airlines, Inc. 304 F.3d 517, 520 (5th Cir. 2002) (quoting Alexander v. Sandoval, 532 U.S. 275, 291 (2001) ("language in a regulation [cannot] conjure up a private cause of action that has not been authorized by Congress")).

plaintiff's exclusive remedy against a savings association.

All that Aurora has shown is that HOLA preemption may be a *defense* to some of Plaintiff's claims.  See, e.g., Fidelity Fed. Savs. & Loan Ass'n v. de la Cuesta, 458 U.S. 141 (1982) (holding that a due-on-sale regulation pursuant to HOLA provided a defense to application of state law).  The preemption defense, however, is not enough to show that a case is removable to federal court.  See, e.g., Caterpillar, 482 U.S. 386, 397 (1987).  Therefore, the complete preemption exception does not establish federal question jurisdiction in this case.

### B.   Diversity Jurisdiction

Aurora and the Law Firm Defendants also argue that the Court has diversity jurisdiction over the case because the Law Firm Defendants "are merely nominal parties and were improperly joined" to the action.  (NOR at ¶ 28.)

#### 1.   Fraudulent Joinder

Where the alleged basis for federal jurisdiction is diversity under 28 U.S.C. § 1332, a court has subject matter jurisdiction if there is: (1) complete diversity of citizenship; and (2) an amount-in-controversy greater than $75,000.  See 28 U.S.C. § 1332(a). Section 1332 requires "complete diversity" of citizenship and a district court generally "cannot exercise diversity jurisdiction if one of the plaintiffs shares the same state citizenship as any one of the defendants."  Corfield v. Dallas Glen Hills LP, 355 F.3d

12

853, 857 (5th Cir. 2003) (citations omitted).  In analyzing diversity, however, the Fifth Circuit has counseled district courts to disregard the citizenship of parties that have been *improperly* joined.  See Smallwood v. Ill. Cent. R.R. Co., 385 F.3d 568, 572-73 (5th Cir. 2004) (en banc) (stating that "federal courts should be "vigilant not to sanction devices intended to prevent the removal to a federal court where a defendant has that right").

The burden of proving fraudulent joinder, however, is on the defendant, and that burden is a "heavy one."  See Griggs v. State Farm Lloyds, 181 F.3d 694, 699, 701 (5th Cir. 1999).  Indeed, the Supreme Court has stated that:

> Merely to traverse the allegations upon which the liability of the resident defendant is rested, or to apply the epithet "fraudulent" to the joinder, will not suffice: the showing must be such as compels the conclusion that the joinder is without right and made in bad faith.

Chesapeake & O. R. Co. v. Cockrell, 232 U.S. 146, 152 (1914). Therefore, in order to establish improper joinder, a defendant must show that the Plaintiff has "no reasonable basis" for recovery against an in-state defendant.  Smallwood, 385 F.3d at 573.  When applying this test, the court conducts "a Rule 12(b)(6)-type analysis, looking initially at the allegations of the complaint to determine whether [it] states a claim under state law against the in-state defendant."  Id.  The court must "resolve all disputed questions of fact and all ambiguities in the controlling state law in favor of the non-removing party."  Hart, 199 F.3d at 246.

Generally, if the plaintiff "survive[s] a Rule 12(b)(6) challenge, there is no improper joinder." Smallwood, 385 F.3d at 573.

In this case, the Court finds that Plaintiff has stated a claim against the Law Firm Defendants. Plaintiff does not specify exactly what role each of the Law Firm Defendants played in the foreclosure of his home, except to allege generally that Law Firm Defendants acted as "substitute trustees." (See, e.g., POP at ¶¶ 10, 30.) Similarly, the Law Firm Defendants each filed answers alleging that each was sued "solely in the capacity as trustee." (NOR Ex. C(18)-(22).) The evidence on record, however, suggests that only Defendant Sue Anthony acted as trustee and that the other Law Firm Defendants facilitated the foreclosure by "produc[ing], mail[ing], and post[ing] all requisite documents and notices." (See, e.g., D.E. 14, Ex. 1; D.E. 16, Ex. 2.) In any case, which Law Firm Defendant in particular acted as trustee is irrelevant because this Court cannot exercise diversity jurisdiction if any *one* of the properly-joined defendants is a citizen of the same state as Plaintiff. Corfield, 355 F.3d at 857. As explained below, Plaintiff has stated a claim against the trustee for failing to comply with the terms of the deed of trust and Texas law.

Under Texas law, "a trustee exercising the authority to foreclose in accordance with the terms of a deed of trust does not act merely as an agent or employee of the lienholder but has a separate capacity with a particular legal responsibility."

14

Peterson v. Black, 980 S.W.2d 818, 822 (Tex. App.--San Antonio 1998) (citing Hammonds v. Holmes, 559 S.W.2d 345, 347 (Tex. 1977)). "When exercising a power in a deed of trust, the trustee becomes a special agent for both parties, and he must act with absolute impartiality and with fairness to all concerned in conducting a foreclosure." Powell v. Stacy, 117 S.W.3d 70, 74 (Tex. App.--Fort Worth 2003). It is true that a trustee does not owe a traditional "fiduciary duty to the mortgagor." Stephenson v. LeBoeuf, 16 S.W.3d 829, 837 (Tex. App.--Houston 2000) (citing First State Bank v. Keilman, 851 S.W.2d 914, 925 (Tex. App.--Austin 1993)). The trustee *does have a duty*, however, to "strictly comply" with terms of the deed of trust as well as the notice and sale provisions of § 51.002 of the Texas Property Code. See, e.g., Powell, 117 S.W.3d at 74; Stephenson, 16 S.W.3d at 837 (stating that a trustee has a duty "to carry out the authority devolved, in scrupulous honesty, according to law and the provisions of the instrument"); Cargal v. Cargal, 750 S.W.2d 382, 385 (Tex. App.--Fort Worth 1988) (duty to follow provisions of Texas Property Code). With respect to the issue of notice in particular, "compliance with the notice condition contained in the deed of trust and as prescribed by law is a prerequisite to the right of the trustee to make the sale." Harwath v. Hudson, 654 S.W.2d 851 (Tex. App.--5th Dist. 1983).

In this case, Plaintiff has alleged that the Law Firm Defendants (as trustees) foreclosed on his home without cause and

failed to give the notice required by law. (POP at ¶¶ 23, 30.) In other words, Plaintiff has alleged that the Law Firm Defendants failed to strictly comply with the terms of the deed of trust and Texas law. Accepting these allegations as true[8], Plaintiff has stated a claim against the trustees under Texas law.

### 2. Personal Liability of the Trustees

Defendants argue, however, that Plaintiff "does not allege any specific facts or conduct . . . that would give rise to a claim or cause of action against the Law Firm Defendants independent of those asserted against Aurora." (NOR at ¶ 29.) Thus, Defendants reason that the Law Firm Defendants' "citizenship must be ignored for the purposes of assessing diversity jurisdiction because they are being sued for their alleged conduct as Aurora's agents." (Aurora's Resp. at 14.) Resolving all ambiguities in Texas law in favor of Plaintiff, however, this Court finds that Plaintiff can state a claim against the trustees in their personal capacities. As the Texas Supreme Court said of a trustee:

---

[8] In their response to Plaintiff's motion to remand, the Law Firm Defendants argue that Plaintiff does not have any *evidence* to support his allegations that the trustees foreclosed without cause and failed to follow Texas law. (Joint Resp. at ¶¶ 7-13, 21-27.) This Court, however, is limited to looking to the allegations of Plaintiff's complaint. See Smallwood, 385 F.3d at 573-74. A summary or evidentiary inquiry "is appropriate *only* to identify the presence of *discrete and undisputed* facts that would preclude plaintiff's recovery against the in-state defendant." Id. at 573-74 (emphasis supplied). The Law Firm Defendants' general claim that the house was "rightfully and properly foreclosed" is not the kind of "discrete and undisputed" fact for which a summary inquiry is appropriate.

> He was trustee in the deed of trust, and plaintiffs allege that he foreclosed without cause to do so . . . . It cannot be said as a matter of law that he acted in the foreclosure in the capacity of bank employee. The trustee has a separate capacity and is imposed with a particular legal responsibility. . . . Summary judgment was not justified [with respect to the trustee] on . . . the allegations of these pleadings alone.

Hammonds, 559 S.W.2d at 347; see also Peterson, 980 S.W.2d at 822 ("a trustee exercising the authority to foreclose . . . does not act merely as an agent or employee of the lienholder but has a separate capacity with a particular legal responsibility").[9] Therefore, there is no merit in Defendants' claim that the Law Firm Defendants are mere extensions of Aurora as a matter of law.

Furthermore, Texas Property Code § 51.007 does not, as Defendants claim, stand for the proposition that "substitute trustees are not proper parties in an action challenging the propriety of mortgage foreclosures." (Aurora's Resp. at 14.) Under § 51.007, a trustee named in a suit may plead "that the trustee is not a necessary party" to the action based on the trustee's "reasonable belief" that he or she was named as a party solely in the capacity as a trustee. Id. at § 51.007(a). The plaintiff then may file a "verified response" rebutting the

---

[9] Aurora asserts that the citizenship of "agents" are ignored for diversity purposes. (Aurora's Resp. at 15.) The settled law in the Fifth Circuit, however, is that an agent's citizenship is considered for diversity purposes if the plaintiff can hold the agent personally liable under state law. See Hart, 199 F.3d at 248. "The fact that [an agent] was acting within the course and scope of his employment is not dispositive" of the jurisdictional question. Id.

17

trustee's claim. Id. at § 51.007(b). If no such response is filed, the court must dismiss the trustee. Id. at § 51.007(c). If, however, plaintiff files a timely response, the court holds a hearing to determine whether the plaintiff has alleged actionable conduct on the part of the trustee or whether the trustee acted in good faith reliance on information provided by a third-party. See Id. at § 51.007(d), (f). Thus, § 51.007 does *not* stand for the proposition that trustees are never appropriate parties to a lawsuit. Rather, the section provides a procedure for identifying and dismissing (where appropriate) claims against trustees in their personal capacities early in the litigation. In this case, Plaintiff has pled, in both his petition and in a verified response (D.E. 10), that he is suing the Law Firm Defendants in their personal capacities. (See, e.g., POP at ¶ 10). As noted above, Plaintiff has also alleged facts which, if true, state a claim against the Law Firm Defendants under Texas law. Therefore, the Law Firm Defendants have been properly joined and the Court does not have diversity jurisdiction over this case.

## III. CONCLUSION

For the reasons discussed above, Plaintiff's Motion to Remand (D.E. 7) is GRANTED and the above-styled action is REMANDED pursuant to 28 U.S.C. § 1447(c) to the County Court at Law No. 3 of Nueces County, Texas, where it was originally filed and assigned Cause Number 0660565-3.

SIGNED and ENTERED this 17th day of May, 2006.

_____
Janis Graham Jack
United States District Judge